Eric Poulin (CA Bar No. 298476)
Paul J. Doolittle (pro hac forthcoming)
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: paul.doolittle@poulinwilley.com
        cmad@poulinwilley.com

*Attorneys for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MIGUEL GONZALEZ, individually and on behalf of all others similarly situated,**<br><br>*Plaintiff,*<br><br>v.<br><br>**COINBASE GLOBAL, INC., and COINBASE INC.,**<br><br>*Defendants.* | Case No.:  3:25-cv-4689<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u><br><br>1. Breach of Fiduciary Duty<br>2. Negligence/Wantonness<br>3. Breach of Implied Contract<br>4. Invasion of Privacy<br>5. Unjust Enrichment |

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiff Miguel Gonzalez, ("Plaintiff") brings this Class Action Complaint against Defendant Coinbase Global, Inc., and Defendant Coinbase Inc., ("Defendants") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

**PARTIES, JURISDICTION & VENUE**

1.     Plaintiff Miguel Gonzalez is a resident and citizen of Houston, Harris County, Texas. Plaintiff Gonzalez is a user of the Coinbase cryptocurrency exchange platform.

2.     Defendant, Coinbase Global, Inc., is a Delaware corporation that operates as a remote-first company and does not have a physical headquarters.   Defendant Coinbase Global's agent for service of process is Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N Sacramento, Sacramento County, California 95833.

3.     Defendant, Coinbase Inc., is a Delaware corporation and a wholly owned subsidiary of Coinbase Global, Inc. Coinbase Inc., operates as a cryptocurrency exchange platform that allows users to buy, sell, and trade cryptocurrencies. Defendant Coinbase Inc.'s agent for service of process is Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N Sacramento, Sacramento County, California 95833.

4.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

5.     Specific jurisdiction: Upon information and belief, Defendants offices located in San Francisco, California are the central hub for Defendants' operations relevant to the instant action. Prior to going remote-first, Defendants' executive leadership was physically located in its San Francisco office. Accordingly, the decision to hire and retain vendors, service providers, or business process outsourcing units outside the United States was made from within this District. Therefore, the Defendants' contacts with this forum are specifically related to the claims alleged against Defendants for their failure to exercise proper oversight of its vendors, service providers, or business process outsourcing units.

6.     This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the laws, rights, and benefits of the State of California; have sufficient minimum contacts in this State; and Plaintiff's claims arise out of or relate to Defendants' business in this State.

7.     Venue is proper under 28 U.S.C §1391(b) because Defendants maintain a registered agent in this District, are subject to the Court's personal jurisdiction, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## **FACTUAL ALLEGATIONS**

8.     Defendants provide platforms that manage the operational complexity, security, and scale of cryptocurrency trading for investors. Defendants allow users to buy, sell, and trade cryptocurrencies and requires users to provide their personal information in connection with the transaction.

9.     Plaintiff and Class Members (later defined) are current and former users of Defendants' various services and products.

10.     In the course of their relationship, Plaintiff and Class Members, provided Defendants with at least the following: name, address, telephone number, email address, Social Security number, government issued ID, and bank account and routing numbers. For additional security, Plaintiff and Class Members were also required to establish passwords and private keys to access their funds.

11.     Upon information and belief, the mechanism of the attack and potential for improper disclosure of Plaintiff's PII was a known risk to Defendants, and thus, Defendants were on notice that failing to take steps necessary to secure the PII from those risks left the data in a dangerous condition. Defendants have summarized their understanding of the threat landscape thusly:

"We have experienced from time to time, and may experience in the future, breaches of our security measures due to human error, malfeasance, insider threats, system errors or vulnerabilities, or other irregularities. Unauthorized parties have attempted, and we expect

that they will continue to attempt, to gain access to our systems and facilities, as well as those of our customers, partners, and third-party service providers, through various means, including hacking, social engineering, phishing, ***and attempting to fraudulently induce individuals (including employees, service providers, and our customers) into disclosing usernames, passwords, payment card information, or other sensitive information, which may in turn be used to access our information technology systems and customers' crypto assets***."[1]

12.     In light of this acknowledgement, Defendants promised to use reasonable technical, administrative, and physical safeguards to protect the PII they collected.  These promises were contained in the applicable privacy policy and through other disclosures in compliance with statutory requirements.

13.     Plaintiff and Class Members, as customers of Defendants, relied on these representations and on these sophisticated business entities to keep their PII confidential, securely maintained, and to make only authorized disclosures of this information.

14.     On May 11, 2025, Defendants received an email communication from an unknown threat actor claiming to have obtained information about Coinbase customer accounts. The communication demanded a ransom in exchange for not publicly disclosing the information. The threat actor obtained this information by paying multiple contractors or employees working in support roles outside the United States to collect information from internal Coinbase systems to which they had access. After investigating, Defendants determined that the unauthorized party accessed and acquired personal data from Coinbase systems (hereafter, the "Data Breach").

15.     Plaintiff brings this class action against Defendants for the failure to properly secure and safeguard the personally identifiable information ("PII") of over 69,000 customers, including, but not limited to: Name, address, phone, and email; Social Security (last 4 digits only); bank-

---

[1] Coinbase Global Inc., U.S. SEC Form 10-K, available here:
https://www.sec.gov/ix?doc=/Archives/edgar/data/0001679788/000167978825000022/coin-20241231.htm#ifacd1696082f4978a998317156e9f2b9_7

account numbers and some bank account identifiers; Government-ID images (e.g., driver's license, passport); and account data (balance snapshots and transaction history).

16.     The Data Breach was a direct result of Defendants' failure to implement an information security program designed to: (a) to ensure the security and confidentiality of customer information; (b) to protect against anticipated threats or hazards to the security or integrity of that information; and (c) to protect against unauthorized access to that information that could result in substantial harm or inconvenience to any customer.

17.     An information security program encompasses the administrative, technical, or physical safeguards used to access, collect, distribute, process, protect, store, use, transmit, dispose of, or otherwise handle customer information. Had Defendants implemented an information security program consistent with industry standards and best practices, they could have prevented the Data Breach.

18.     As a result of the Data Breach, Plaintiff has suffered an actual injury, similar to an intangible harm remedied at common law. Defendants' failure to implement an information security program resulted in the unauthorized disclosure of Plaintiff's private information to cybercriminals. The unauthorized disclosure of Plaintiff's PII constitutes an invasion of a legally protected privacy interest, that is traceable to the Defendants' failure to adequately secure the PII in their custody, and has resulted in actual, particularized, and concrete harm to the Plaintiff.  The injuries Plaintiff suffered, as described herein, can be redressed by a favorable decision in this matter.

19.     Defendants' conduct, as evidenced by the circumstances of the Data Breach, has created a substantial risk of future identity theft, fraud, or other forms of exploitation.

20.     In fact, data acquired in the Data Breach has already been misused. Reports indicate that the "wealth of information" obtained in the Data Breach "help[ed] criminals pose as fake

CLASS ACTION COMPLAINT

Coinbase agents, who contacted customers and persuaded them the hand over their crypto funds" using social engineering scams.[2]

21.     Since the Data Breach, Plaintiff Gonzales has experienced multiple fraudulent attempts to access his Coinbase account and/or deceive him into transferring cryptocurrency. Plaintiff has lost time and effort spent responding to the Data Breach, out-of-pocket expenses, and experiences anxiety over the consequences of the Data Breach. For instance, Plaintiff Gonzales has also experienced evidence of fraud on his credit card accounts that he believes may be traceable to the Data Breach as well.  The harm Plaintiff suffered can be redressed by a favorable decision in this matter.

22.     Plaintiff and Class Members face a substantial risk of future spam, phishing, or other social engineering attacks where their full names, addresses, email addresses, and phone numbers were stolen by a cybercriminal, known for stealing and reselling personal data on the dark web. Names, telephone numbers and email addresses can be used by cybercriminals to launch social engineering attacks designed to trick individuals into giving away sensitive information. Plaintiff and Class Members must incur out of pocket costs for purchasing products to protect from phishing, smishing (SMS message), vishing (voice messaging), pretexting, and other social engineering-based attacks.

23.     As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and

---

[2] *Inside the $400 million Coinbase breach: An Indian call center and teenage hackers*, Fortune, B. Weiss, J. Roberts, available here: https://fortune.com/crypto/2025/05/29/coinbase-hack-the-community-taskus-bpos-teenagers/

increased risk their PII will be further misused, where their data remains unencrypted and available for unauthorized third parties to access on the dark web or otherwise.

24.    Plaintiff brings this class action lawsuit individually, and on behalf of all those similarly situated, to address Defendants' inadequate data protection practices and for failing to provide timely and adequate notice of the Data Breach.

25.    Through this Complaint, Plaintiff seeks to remedy these harms individually, and on behalf of all similarly situated individuals whose PII was accessed during the Data Breach. Plaintiff has a continuing interest in ensuring that personal information is kept confidential and protected from disclosure, and Plaintiff should be entitled to injunctive and other equitable relief.

### *Data breaches are avoidable.*

26.    Upon information and belief, the Data Breach was a direct result of Defendants' failure to: (i) identify risks and potential effects of collecting, maintaining, and sharing personal information; (ii) adhere to its published privacy practices; (iii) implement reasonable data protection measures for the collection, use, disclosure, and storage of personal information; and/or (iv) ensure its third-party vendors, or business process outsourcing units (BPOs), were required to implement reasonable data protection measures consistent with Defendants' data protection obligations.

27.    More specifically, Defendants used BPOs located outside of the United States to save labor costs. However, "because these agents earn low wages compared with workers in the U.S., they've proved susceptible to bribes."[3]

28.    The Federal Trade Commission's Standards for Safeguarding Customer Information (the "Safeguards Rule") 16 CFR §314, requires covered financial institutions to develop, implement, and maintain an information security program with administrative, technical, and physical safeguards designed to protect customer information.

---

[3] *Inside the $400 million Coinbase breach: An Indian call center and teenage hackers*, Fortune, B. Weiss, J. Roberts, available here: https://fortune.com/crypto/2025/05/29/coinbase-hack-the-community-taskus-bpos-teenagers/

29.    The following recommendations should be followed:

a.   Before you outsource any of your business functions investigate the company's data security practices and compare their standards to yours.[4]

b.   Select service providers with the skills and experience to maintain appropriate safeguards. Include security expectations in vendor contracts, monitor the service provider's work, and provide for periodic reassessments of their suitability.

c.   Designate a qualified individual to implement and supervise the information security program.

d.   Conduct an assessment to determine foreseeable risks and threats service providers present to the security, confidentiality, and integrity of customer information.

e.   Design and implement safeguards to control the risks identified through the risk assessment.

f.   Regularly monitor and test the effectiveness of the service providers' safeguards.

g.   Provide security awareness training and schedule regular refreshers.

h.   Negotiate contracts with service providers that include clear obligations regarding data privacy and security.

i.   Develop a plan to respond to security incidents involving service providers.

30.    Given that Defendants are engaged in activities that are financial in nature, or incidental to such financial activities, Defendants could and should have identified the risks and potential effects of collecting, maintaining, and sharing personal information.

31.    Without identifying the potential risks to the personal data in Defendants' possession, Defendants could not identify and implement the necessary measures to detect and prevent cyberattacks. The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to protect the security, confidentiality and integrity of customer information, resulting in the Data Breach and the exposure of Plaintiff's and the Class Members' PII.

32.    Defendants knew and understood PII is valuable and highly sought after by cybercriminals seeking to illegally monetize that data. At all relevant times, Defendants knew, or

---

[4] *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (accessed June 11, 2024).

reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if a data breach occurred, including the significant cost that would be imposed on Plaintiff and the Class Members as a result.

33.    Upon information and belief, a criminal can easily link data acquired in the Data Breach with information available from other sources to commit a variety of fraud related crimes. An example of criminals piecing together bits and pieces of data is the development of "Fullz" packages.[5] With "Fullz" packages, cyber-criminals can combine multiple sources of PII to apply for credit cards, loans, assume identities, or take over accounts.

34.    Given the type of targeted attack in this case, the sophistication of the criminal responsible for the Data Breach, the type of PII involved in the Data Breach, the ability of criminals to link data acquired in the Data Breach with information available from other sources, and the fact that the stolen information has been placed, or will be placed, on the dark web, it is reasonable for Plaintiff and the Class Members to assume that their PII was obtained by, or released to, criminals intending to utilize the PII for future identity theft-related crimes or exploitation attempts.

35.    The substantial risk of future identity theft, fraud, or other exploitation that Plaintiff and Class Members face is sufficiently concrete, particularized, and imminent that it necessitates the present expenditure of funds to mitigate the risk. Consequently, Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to understand and mitigate the effects of the Data Breach.

36.    For example, the Federal Trade Commission has recommended steps that data breach victims take to protect themselves and their children after a data breach, including: (i)

---

[5] "Fullz" is term used by cybercriminals to describe "a package of all the personal and financial records that thieves would need to fraudulently open up new lines of credit in a person's name." A Fullz package typically includes the victim's name, address, credit card information, social security number, date of birth, bank name, routing number, bank account numbers and more. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm

contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity); (ii) regularly obtaining and reviewing their credit reports; (iii) removing fraudulent charges from their accounts; (iv) closing new accounts opened in their name; (v) placing a credit freeze on their credit; (vi) replacing government-issued identification; (vii) reporting misused Social Security numbers; (viii) contacting utilities to ensure no one obtained cable, electric, water, or other similar services in their name; and (ix) correcting their credit reports.[6]

37.     Furthermore, Defendants' poor data security practices deprived Plaintiff and Class Members of the benefit of their bargain. By transacting business with Plaintiff and Class Members, collecting their PII, using their PII for profit or to improve the ability to make profits, and then permitting the unauthorized disclosure of the PII, Plaintiff and Class Members were deprived of the benefit of their bargain.

38.     When agreeing to pay Defendants for products or services, consumers understood and expected that they were, in part, paying for the protection of their personal data, when in fact, Defendants did not invest the funds into implementing reasonable data security practices. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendants.

39.     Through this Complaint, Plaintiff seeks redress individually, and on behalf of all similarly situated individuals, for the damages that resulted from the Data Breach.

## CLASS ALLEGATIONS

40.     Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

---

[6] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps

41.     The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class:** All individuals residing in the United States whose PII was acquired by an unauthorized party as a result of a data breach that was reported by Defendants in, or around, May 2025 (the "Class" or "Class Members").

42.     Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

43.     Plaintiff reserves the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

44.     <u>Numerosity</u>: The members of the Classes are so numerous that joinder of all members is impracticable, if not completely impossible. The members of the Classes are so numerous that joinder of all of them is impracticable. However, the exact number of Class Members is unknown to Plaintiff at this time and such number is exclusively in the possession of Defendants.

45.     Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes. The questions of law and fact common to the Classes that predominate over questions which may affect individual Class Members, includes the following:

    a.  Whether and to what extent Defendants had a duty to protect the PII of Plaintiff and Class Members;

    b.  Whether Defendants had a duty not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

    c.  Whether Defendants failed to adequately safeguard the PII of Plaintiff and Class Members;

d.  Whether Defendants required third-party vendors to adequately safeguard the PII of Plaintiff and Class Members;

e.  When Defendants actually learned of the Data Breach;

f.  Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g.  Whether Defendants violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.  Whether Defendants adequately addressed and fixed the practices, procedures, or vulnerabilities which permitted the Data Breach to occur;

j.  Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of each Defendants' wrongful conduct;

k.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm faced as a result of the Data Breach.

46.     <u>Typicality</u>: Plaintiff's claims are typical of those of the other members of the Classes because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Classes.

47.     <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on each Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

48.     <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages suffered are typical of other

Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

49.    <u>Superiority and Manageability</u>: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

50.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since Defendants would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

51.    The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class

Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

52.    Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

53.    Unless a Class-wide injunction is issued, Defendants may continue in the failure to properly secure the PII of Classes, Defendants may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendants may continue to act unlawfully as set forth in this Complaint.

54.    Further, Defendants have acted on grounds that apply generally to the Classes as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

55.    Likewise, particular issues under Rule 42(d)(1) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.  Whether Defendants owed a legal duty to Plaintiff and the Classes to exercise due care in collecting, sharing, storing, and safeguarding their PII;

    b.  Whether Defendants' failure to institute adequate data protection measures amounted to negligence/wantonness;

    c.  Whether Defendants failed to take commercially reasonable steps to safeguard consumer PII;

    d.  Whether Defendants made false representations about their data privacy practices and commitment to the security and confidentiality of personal information; and

    e.  Whether adherence to data privacy recommendations and best practices would have prevented the Data Breach.

# CAUSES OF ACTION
### (*On behalf of Plaintiff and the Classes*)

### COUNT 1: BREACH OF FIDUCIARY DUTY

56.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

57.    Defendants had a fiduciary duty to Plaintiff and Class Members as a result of the financial relationship. Plaintiff and Class Members reposed trust and confidence in Defendants to adequately safeguard the confidentiality of the PII collected or created during that financial relationship.

58.    Defendants breached the fiduciary duties owed to Plaintiff and Class Members by failing to ensure the confidentiality, integrity, and availability of PII Defendants created, received, maintained, and transmitted.

59.    Defendants breached fiduciary duties owed to Plaintiff and Class Members by failing to protect against reasonably anticipated threats or hazards to the confidentiality, integrity, and availability of the PII in their possession.

60.    Defendants breached fiduciary duties owed to Plaintiff and Class Members by impermissibly and improperly using and disclosing PII that is and remains accessible to unauthorized persons.

61.    Defendants breached fiduciary duties owed to Plaintiff and Class Members by failing to effectively train all members of its workforce (including independent contractors) on the policies and procedures with respect to PII as necessary and appropriate to carry out their functions.

62.    Defendants breached fiduciary duties owed to Plaintiff and Class Members by failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PII.

63.    As a direct and proximate result of Defendants' breach of fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, as described herein. Accordingly, Plaintiff and Class Members are entitled to compensatory, consequential, and/or nominal damages in an amount to be determined.

## COUNT 2: NEGLIGENCE/WANTONNESS

64.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

65.    Defendants require their users, including Plaintiff and Class Members, to submit PII in the ordinary course of providing products or services.

66.    Defendants gathered and stored the PII of Plaintiff and Class Members as part of its business of soliciting its services to customers. Plaintiff and Class Members entrusted Defendants with their PII with the understanding that Defendants would adequately safeguard their information.

67.    Defendants had full knowledge of the types of PII collected and the types of harm that Plaintiff and Class Members would suffer if that data was accessed and exfiltrated by an unauthorized third-party.

68.    Defendants regularly transfer money to and from customers' cryptocurrency and/or bank accounts. Since Defendants engage in activities that are financial in nature, they had a duty to develop, implement, and maintain reasonable administrative, technical, and physical safeguards to protect the security, confidentiality, and integrity of customer information.

69.    Defendants had a duty to develop, implement, and maintain a written information security program designed to protect customer information.  The information security program must be appropriate to the size and complexity of the business, the nature and scope of business activities, and the sensitivity of the information at issue.

70.    Defendants' information security program must be designed to: (a) ensure the security and confidentiality of customer information; (b) protect against anticipated threats or

hazards to the security, confidentiality, or integrity of that information; and (c) protect against unauthorized access to that information that could result in substantial harm or inconvenience to any customer.

71.    Defendants' duty included a responsibility to ensure they: (i) implemented reasonable administrative, technical, and physical measures to detect and prevent unauthorized intrusions into its information technology environments; (ii) contractually obligated its vendors to adhere to applicable statutes and data protection obligations; (iii) conducted regular privacy assessments and security audits of its vendors' data processing activities; (iv) regularly audited for compliance with contractual and other applicable data protection obligations; and, (v) provided timely notice to individuals impacted by a data breach event.

72.    Defendants had a duty to notify Plaintiff and the Class of the Data Breach promptly and adequately. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any fraudulent usage of their PII.

73.    Defendants breached their duties by failing to adhere to privacy policies regarding the confidentiality and security of Plaintiff and Class Members information. Defendants further breached their duties by failing to implement an information security plan or use reasonable security measures to protect PII.

74.    Furthermore, Defendants breached their duty to oversee service providers and vendors, including, but not limited to: (i) failing to take reasonable steps to select and retain service providers that are capable of maintaining appropriate safeguards for the customer information at issue; (2) failing to contractually require service providers to implement and maintain appropriate safeguards for customer PII; and (3) failing to periodically assess their business process outsourcing units (BPOs) and other service providers based on the unique risks they present and the continued adequacy of their safeguards. Defendants' actions constitute negligence/wantonness.

75.     The injuries resulting to Plaintiff and the Class because of Defendants' failure to use adequate security measures was reasonably foreseeable.

76.     Plaintiff and the Classes were the foreseeable victims of a data breach.

77.     Plaintiff and the Classes had no ability to protect the PII in each Defendant's possession. Defendants were in the best position to protect against the harms suffered by Plaintiff and the Classes as a result of the Data Breach.

78.     But for Defendants' breach of duties owed to Plaintiff and the Class, their PII would not have been compromised. There is a close causal connection between Defendants' failure to implement reasonable security measures to protect the PII of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class.

79.     As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and increased risk their PII will be misused, where their data remains unencrypted and available for unauthorized third parties to access.

## COUNT 3: BREACH OF IMPLIED CONTRACT

80.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

81.     Defendants create or collect PII in the ordinary course of providing products or services.

82.     Upon information and belief, Defendants established a privacy policy to govern the collection, use, sharing, and protection of customer information.

83.    In so doing, Plaintiff and Class Members entered implied contracts with Defendants by which Defendants agreed to use reasonable technical, administrative, and physical safeguards to protect against unauthorized access to, use of, or disclosure of the personal information. Defendants' obligation includes ensuring its vendors are contractually required to use reasonable technical, administrative, and physical safeguards to protect PII.

84.    Plaintiff and Class Members would not have entrusted their PII to Defendants in the absence of an expressed or implied promise to implement reasonable data protection measures and to ensure its vendors do the same.

85.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contract with Defendants.

86.    Defendants breached the implied contract with Plaintiff and Class Members which arose from the course of conduct between the parties, as well as disclosures on the Defendants' web site, privacy policy, and in other documents, all of which created a reasonable expectation that the personal information Defendants collected would be adequately protected and that the Defendants would take such actions as were necessary to prevent unauthorized access to, use of, or disclosure of such information.

87.    As a direct and proximate result of the Defendants' breach of an implied contract, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including cancelled or rescheduled medical procedures and appointments; (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and increased risk their data will be misused, where their data remains unencrypted and available for unauthorized third parties to access.

**COUNT 4: INVASION OF PRIVACY**

88.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

89.     Plaintiff and Class Members had a legitimate expectation of privacy in their sensitive personally identifying information such as Social Security numbers and financial information. Plaintiff and Class Members were entitled to the protection of this information from disclosure to unauthorized third parties.

90.     Defendants owed a duty to Plaintiff and Class Members to keep their PII confidential.

91.     Defendants permitted the public disclosure of Plaintiff's and Class Members' PII to unauthorized third parties.

92.     The PII that was disclosed without the Plaintiff's and Class Members' authorization was highly sensitive, private, and confidential. The public disclosure of the type of PII at issue here would be highly offensive to a reasonable person of ordinary sensibilities.

93.     Defendants failed to exercise the level of vendor oversight required by law, which created an atmosphere for the Data Breach to occur.  Due to Defendants' poor vendor oversight, its vendors were vulnerable to foreseeable threats, such as employee bribery, which created an atmosphere for the Data Breach to occur. Despite knowledge of the substantial risk of harm created by these conditions, Defendants intentionally disregarded the risk, thus permitting the Data Breach to occur.

94.     By permitting the unauthorized disclosure, Defendants acted with reckless disregard for the Plaintiff's and Class Members' privacy, and with knowledge that such disclosure would be highly offensive to a reasonable person. Furthermore, the disclosure of the PII at issue was not newsworthy or of any service to the public interest.

95.    Each Defendant was aware of the potential of a data breach and failed to implement appropriate policies and procedures to prevent the unauthorized disclosure of Plaintiff's and Class Members' data.

96.    Defendants acted with such reckless disregard as to the safety of Plaintiff's and Class Members' PHI/PII to rise to the level of intentionally allowing the intrusion upon the seclusion, private affairs, or concerns of Plaintiff and Class Members.

97.    Plaintiff and Class Members have been damaged by the invasion of their privacy in an amount to be determined at trial.

### COUNT 5: UNJUST ENRICHMENT

98.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

99.    Plaintiff brings this Count in the alternative to the breach of implied contract count above.

100.    Plaintiff and Class Members conferred a monetary benefit on Defendants by using the cryptocurrency platform. During this financial relationship, Defendant collected PII regarding Plaintiff and Class Members such as driver's license, social security number and banking information to facilitate the purchase and exchanging of cryptocurrencies and the transfer of money. Defendants knew that Plaintiff and Class Members conferred a benefit upon them and have accepted and retained that benefit.

101.    By collecting customer PII in connection with a financial service, Defendants were obligated to safeguard and protect such information, to keep such information confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been compromised or stolen.

102.    Defendants failed to secure Plaintiff's and Class Members' PII and, therefore, it would be unjust for Defendants to retain any of the benefits that Plaintiff and Class Members conferred upon Defendants without paying value in return.

103.    As a direct and proximate result of the Defendants' conduct, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and increased risk their PII will be misused, where. their data remains unencrypted and available for unauthorized third parties to access.

104.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully requests that the Court enter judgment as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff(s) as the representatives for the Classes and counsel for Plaintiff(s) as Class Counsel;

B.    For an order declaring the Defendants' conduct violates the statues and causes of action referenced herein;

C.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D.    Ordering Defendants to pay for adequate credit monitoring and dark web scanning services for Plaintiff and the Classes;

E.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F.    For prejudgment interest on all amounts awarded;

G.    For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendants' conduct;

H.    For injunctive relief as pleaded or as the Court may deem proper; and

I.    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

J.    Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: June 4, 2025.                    Respectfully submitted,

*/s/ Eric Poulin*
Eric Poulin (CA Bar No. 298476)
Paul J. Doolittle, Esq.[*]
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: paul.doolittle@poulinwilley.com
            cmad@poulinwilley.com

*Attorneys for Plaintiff and Proposed Class*

[*]*Pro Hac Vice forthcoming*